# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**MARILYN J. HATCHER,**

**Plaintiff,**

**-vs-**                                             **Case No.  2:11-cv-463-FtM-29DNF**

**MICHAEL ASTRUE, Commissioner of**
**Social Security,**

**Defendant.**

_____

# REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

This matter comes before the Court on Plaintiff, Marilyn J. Hatcher's Complaint (Doc.

1), filed February 12, 2008, seeking review of the final decision of the Commissioner of Social

Security (Commissioner) denying Plaintiff's claim for Disability Insurance Benefits ("DIB) and

Supplemental Security Income ("SSI").[1]  In both applications, Plaintiff alleged disability

beginning (June 17, 2005), then amended her onset date to January 28, 2007 at the hearing (Tr.

12).  These claims were denied initially on July 21, 2008, and upon reconsideration on

December 17, 2008.  After being denied initially and upon reconsideration, Plaintiff requested a

hearing, and a video hearing was held on May 21, 2010.  Plaintiff appeared in Fort Myers,

Florida, and the ALJ presided over the hearing from Fort Lauderdale, Florida.  Gary R.

---

[1]     Because the disability definitions for DIB and SSI benefits are identical, cases under one
statute are persuasive as to the other. *Patterson v. Bowen*, 791 F.2d 1544, 1545 n.2 (11th Cir.
1986).

Fannin, an impartial vocational expert appeared at the hearing and Plaintiff was represented by

counsel. On June 30, 2010, Administrative Law Judge (ALJ) Denise Pasvantis, issued a

decision denying Plaintiff's claims (Tr. 12-23).  The Appeals Council denied Plaintiff's request

for review on June 23, 2010 (Tr. 1-3).  The Commissioner filed the Transcript of the

proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). This

case is now ripe for review.

The Court has reviewed the record, including a transcript of the proceedings before the

Administrative Law Judge, the exhibits filed and administrative record, and the pleadings and

memoranda submitted by the parties in this case.  For the reasons set forth herein, it is

respectfully recommended that the decision of the Commissioner be **AFFIRMED** pursuant to

42 U.S.C. § 405(g).

## I.      Social Security Act Eligibility, Procedural History, and Standard of Review

### A.      Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than

twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be

severe, making Plaintiff unable to do her previous work, or any other substantial gainful

activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-

404,1511.

**B.       Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). The Court must, "review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)(citing *Lewis v. Callahan,* 125 F.3d 1436, 1439 (11th Cir.1997))."Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion." *Id.* "Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)(citing *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990)). The Court must, "view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)(citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986)). However, the Court, "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)(citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

The ALJ must follow a five step sequential evaluation process for determining whether an individual is disabled.  20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is doing any substantial gainful activity then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(I).

The second step considers the medical severity of the impairment: if there is not a severe medically determinable physical or mental impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

The third step also considers the medical severity of the impairment. If the claimant has an impairment that meets or equals one of the listings and meets the duration requirement, the claimant will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

The fourth step is assessing the residual functional capacity of the claimant, and the claimant's past relevant work.  If the claimant can still do his past relevant work then he will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

The fifth step considers the residual functional capacity as well as the age, education, and work experience of the claimant to see if he can make an adjustment to other work.  If the claimant can make an adjustment to other work then the claimant will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(v). The Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287 (1987);  *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty*, 245 F.3d at 1278 n.2.

## II.   Review of Facts

### A.   Background Facts

The Plaintiff was born October 8, 1962, and was 47 years old at the time of the hearing decision (Tr. 33). The Plaintiff testified she completed 10th grade and never obtained a GED.

The Plaintiff formerly worked as a cook helper/prep cook (Tr. 23).  The Plaintiff alleges

disability starting January 28, 2007, due to:  back and knee pain; history of chest pain and

shortness of breath; history of hand numbness; morbid obesity; hypertension; hypothyroidism;

pronator tear syndrome; reading disorder; and borderline intellectual functioning (Tr. 15).

> **B.     The ALJ's Findings**

At step one, the ALJ found that the Plaintiff met the insured status requirements of the

Social Security Act through June 30, 2009, and has not engaged in substantial gainful activity[2]

since January 28, 2007 (the amended alleged onset date) (Tr. 14).

At step two, the ALJ found that the Plaintiff has the following severe impairments:

back and knee pain; history of chest pain and shortness of breath; history of hand numbness;

morbid obesity; hypertension; hypothyroidism; pronator tear syndrome; reading disorder; and

borderline intellectual functioning (Tr. 15).

At step three, the ALJ found that the Plaintiff does not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520 (d), 404.1525, 404,1526,

416.920(d), 416.925 and 416.926). (Tr. 16).

The ALJ determined that: 1)  the medical evidence did not document any physical

listing that met or equaled a listing; and  2)  Plaintiff's mental impairment does not meet or

medically equal the criteria of listing 12.02 (Tr. 16).

---

[2]     Plaintiff's earnings record shows income of $719.13 in 2009.  The Plaintiff testified
she attempted to work as a prep cook for approximately 6 weeks but could not stand
to perform the job duties.  The ALJ found Plaintiff's work activity is an unsuccessful
work attempt.  SSR 84-26.

The ALJ considered if the mental impairment resulted in at least two of the four following criteria: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (Tr. 16).

The ALJ found that Plaintiff's mental impairments resulted in mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulty in maintaining concentration, persistence of pace, and no episodes of decompensation.

The ALJ found in activities of daily living the Plaintiff has mild restriction. (Tr. 12). Plaintiff is able to shop by mail, prepare simple foods, read and watch television.  A third party function report completed by Plaintiff's daughter-in-law, indicated Plaintiff is able to live alone in her apartment.   However, although Plaintiff has a drivers' license, she does not own a car and drives very seldom.

The ALJ found that the Plaintiff has moderate difficulties in social functioning. (Tr. 16). Plaintiff testified she visits with family and friends.  She also reported traveling to Tallahassee by bus to visit others (Tr. 16).

The ALJ found that the Plaintiff had only mild difficulties with concentration, persistence and pace because although Plaintiff reported some difficulties, she also reported reading the paper and magazines and watching a little television.  Plaintiff occasionally attends church and occasionally talks on the telephone.  No limitations of attention or concentration were noted on consultative examination, however, the Plaintiff did not remember any items of 3 after a day (Tr. 16).

Lastly, the ALJ found that Plaintiff has not experienced episodes of decompensation which have been of extended duration and the record does not establish any episodes of decompensation of extended duration. (Tr. 16).

Next, the ALJ found that the Plaintiff :

> Has the residual functional capacity to perform light exertional work.  Plaintiff has the RFC to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours total in an 8-hour workday and sit 6 hours in an 8 hour workday.  Plaintiff is able to understand, remember, and carry out simple instructions and concentrate and persist for simple tasks.  Plaintiff is limited to work that requires occasional interaction with the public.  20 CFR 404.1529 and 416.929.

(Tr. 17).

At step four, the ALJ found that the Plaintiff is unable to perform any of her past relevant work.

At step five, Plaintiff's ability to perform all or substantially all of the requirements of light exertional work has been impeded by additional limitations (as noted previously). Therefore, the ALJ asked the vocational expert whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity. The vocational expert testified that Plaintiff would be able to perform the position of a cleaner/housekeeper, cafeteria attendant or marker.  Based on these findings, the ALJ properly determined that the Plaintiff was not disabled. (Tr. 22).

### C.    Plaintiff's Medical History

On January 28, 2007, Plaintiff was seen at the Desoto County Health Department. (Tr. 297). Progress notes reveal that Plaintiff complained of pain and swelling in her right leg, and frequent urination. Plaintiff  was diagnosed with superficial deep vein thrombosis. (Tr. 297).

On July 18, 2007, progress notes reveal Plaintiff had pain and tenderness at her right knee. Plaintiff was diagnosed with hypertension, tinea corporis, and right knee pain; and prescribed Tramadol and Nystatin. (Tr. 298).

On November 30, 2007, Plaintiff went to the emergency room at the Desoto Memorial Hospital. Plaintiff had pain and mild swelling with her left knee, as well as symptoms of swelling at her right knee. Plaintiff was diagnosed with arthritis and prescribed Lortab and Celebrex. (Tr. 307-308). A duplex ultrasound of the lower extremities were reported as normal. (Tr. 309).

On December 12, 2007, Plaintiff reported persistent swelling of her leg. (Tr. 297). She was noted to have edema and was diagnosed with left knee arthralgia. (Tr. 299).

On January 30, 2008, Plaintiff had multiple complaints: leg pain, frequent urination, tingling in hands, and sleeping disturbances. Plaintiff was wearing a brace on her wrist, and reported tingling. Plaintiff was reported to have mild neck spasms, tingling of the left arm, and moderate discomfort with range of motion. Plaintiff had edema of the left knee with meniscal tenderness. Plaintiff was diagnosed with cervical spine discogenic disorder, left leg arthritis, and hypertension and was referred to a neurosurgeon for her cervical spine. (Tr. 300).

On March 14, 2008, Plaintiff went to the emergency room for pain at her left flank. (Tr. 318). She was noted to have urinary frequency. (Tr. 324). Plaintiff was diagnosed with flank pain and muscle strain. (Tr. 331). A CT of the abdomen was performed that had normal results. (Tr. 321).

On March 19, 2008, Plaintiff still reported pain at her left knee. Plaintiff was diagnosed with arthritis of the lumbar spine and left knee. (Tr. 301).

-8-

As of April 16, 2008, Plaintiff continued to complain of lower back pain, vomiting, and increased urinary frequency. At this visit, Plaintiff was diagnosed with sinusitis, urinary tract infection, allergic rhinitis, fasting glucose intolerance, and metabolic syndrome. Plaintiff was prescribed Ciprofloxacin and Zyrtec. (Tr. 302).

On May 6, 2008, Plaintiff again reported chronic right knee pain, increased urination, hypertension, and leg swelling at the Desoto County Health Department. She was noted to have mild pitting edema with hair thinning. Plaintiff was diagnosed with hypertension and hypothyroidism and was prescribed Norvasc. (Tr. 333).

On June 3, 2008, Dr. Kenneth Visser, at the request of the SSA, had a consultative evaluation with Plaintiff. (Tr. 338). Plaintiff advised of vision problems, extreme anxiety, chest pain, and pain in her back, legs, feet, and knee , with numbness of her hands and feet. (Tr. 338). Plaintiff advised she dragged her right foot and scraped the pavement with the top of her right shoe. She stated that she did not perform any chores around her home and has difficulties with showering and sleeping at night. (Tr. 339). According to Plaintiff's mother, she had a tendency to talk about the same issues over and over. She was often frightened and had nightmares of her past. She reported hallucinations within the past year and misinterpreted sensory data. For example, she felt that something was crawling on her body when nothing was there. She would even wake up screaming because she felt something was crawling on her. (Tr. 340). Dr. Visser administered cognitive tests to Plaintiff, in which she was stated to be functioning well below average. Dr. Visser noted that Plaintiff has great difficulty in assessing her needs and making appropriate choices to meet them. She was very withdrawn and tended to rely on her mother. Plaintiff was diagnosed with paranoid schizophrenia, reading disorder, and

borderline intellectual functioning with a global assessment of functioning level of 40. (Tr. 341). Dr. Visser stated that some questions had to be simplified in order for Plaintiff to understand them. (Tr. 341). Plaintiff had difficulty concentrating with additional social difficulties. (Tr. 342).

On June 23, 2008, Plaintiff had a consultative evaluation with Dr. Martha Pollock on behalf of the SSA. (Tr. 345). Plaintiff complained of pain in her back and knee with vision disturbances and chest pain. She also had pain in her shoulders and hands. (Tr. 345). Plaintiff's height was recorded as 5'5" and her weight was 280 pounds. (Tr. 346). Plaintiff reported that she requires help with bending and lifting and has the help of family members to assist with housework. She had occasional chest pains and shortness of breath. Plaintiff was noted to have a tenth grade education with a history of Exceptional Student Educational classes (which Plaintiff did not mention at the hearing). (Tr. 345). According to Dr. Pollock, Plaintiff walked with a wide-based gait with somewhat small steps. She was unable to heel and toe walk, or hop or squat. Her range of motion at her back and knees was diminished. (Tr. 346). Plaintiff was diagnosed with a history of knee and back pain that may be related to degenerative disc disease due to morbid obesity. (Tr. 347). She was also diagnosed with a history of chest pain and shortness of breath. Dr. Pollock noted that Plaintiff "did have difficulty performing these studies due to a lack of ability to understand". Plaintiff was also diagnosed with a history of hand numbness. (Tr. 348). An x-ray of the bilateral knees revealed minor medial and lateral marginal ostephytosis at the left femorotibial joint. (Tr. 349).

A pulmonary function test was also administered by Dr. Pollock. Plaintiff had difficulty understanding the directions. However, Dr. Pollock stated that she was cooperative

and expended maximal effort.  Plaintiff's FEV1 levels pre-bronchodilatation were 0.6, 0.6, and 0.4 liters. Her FEV1 levels post-bronchodilatation with Albuterol were recorded as 0.0, 0.8, and 0.8 liters. (Tr. 351).

On July 21, 2008, Mr. Christian Fabian, disability examiner,  completed a Physical Residual Functional Capacity questionnaire for the Office of SSA that diagnosed Plaintiff with chronic knee and back pain with a history of hand numbness. (Tr. 375). Mr. Fabian checked boxes indicating that Plaintiff was only able to occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand and/or walk for up to six hours, and sit for up to six hours within an eight hour workday. (Tr. 376). Mr. Fabian also stated that Plaintiff was never capable of climbing ladders, ropes, or scaffolds, and was only occasionally able to climb ramps or stairs, stoop, kneel, crouch, or crawl. (Tr. 377). Plaintiff was to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation and hazards. (Tr. 379).

On July 21, 2008, Dr. Sharon Ames-Dennard completed a Psychiatric Review Technique Form for the Office of SSA. The doctor checked boxes that stated Plaintiff  had moderate difficulties in maintaining concentration, persistence, or pace, mild difficulties in maintaining social functioning, and mild restrictions with activities of daily living. (Tr. 365).

Dr. Ames-Dennard also completed a mental residual functional capacity ("MRFC") for the Office of SSA that pertained to Plaintiff. According to Dr. Ames-Dennard, Plaintiff was moderately limited with her abilities to maintain attention and concentration for extended periods and completing a normal workday and workweek without psychological interruptions. (Tr. 369-370).

On December 17, 2008, Dr. Edward Holifield completed a Physical Residual Functional Capacity Assessment Form for the Office of SSA that diagnosed Plaintiff with chronic lower back pain and obesity. (Tr. 383). Dr. Holifield checked boxes that indicated Plaintiff was able to occasionally lift up to 50 pounds and could frequently lift up to 25 pounds. Dr. Holifield also stated that Plaintiff was able to stand and/or walk for up to six hours and sit for up to six hours within an eight-hour workday. (Tr. 384).

On December 17, 2008, Dr. Jeffrey Benoit completed a Psychiatric Review Technique Form for the Office of SSA. (Tr. 395). Dr. Benoit checked boxes that stated Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace, moderate difficulties in maintaining social functioning, and mild restrictions in completing activities of daily living. (Tr. 405).

Dr. Benoit also completed a Mental Residual Functional Capacity Assessment on December 17, 2008 for the Office of the SSA. He reported that Plaintiff had moderate limitations in her abilities to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without psychological interruptions, interact appropriately with the general public, and get along with co-workers or peers without distracting them or exhibiting behavior extremes. (Tr. 391-392).

On September 5, 2008, Plaintiff complained of breathing difficulties, pain in her left knee and back, urination frequency, and tingling in her hands and feet. Plaintiff was diagnosed with pain in her right leg and sinusitis and was prescribed Loratadine. (Tr. 334).

-12-

On October 1, 2008,  Plaintiff still reported pain and swelling in her left knee. (Tr. 334).

On April 28, 2010, Plaintiff had back pain that "radiates to both arms with numbness" and was prescribed Diclofenac and Cyclobenzaprine. (Tr. 415).

On April 30, 2010, Dr. M. Gayst completed a Physical Capacity Evaluation Form for the office of SSA. (Tr. 418).  Dr. Gayst stated Plaintiff was only occasionally able to bend and was never able to squat, crawl, or climb.  Dr. Gayst noted Plaintiff suffered from pronator teres syndrome, sacroiliac joint pain, and left knee pain. According to Dr. Gayst, Plaintiff was only able to lift up to ten pounds occasionally, and was unable to use her hands for repetitive simple grasping, pushing and pulling, or fine manipulation. Plaintiff was also unable to use her feet for repetitive movements, as in operating foot controls. (Tr. 418-419).

## III.    Specific Issues and Conclusions of Law

Plaintiff raises only one issue on appeal.  Plaintiff contends that the ALJ erred by failing to explain why Plaintiff's respiratory ailments do not meet Listing 3.02B for chronic restrictive ventilatory disease in light of the pulmonary function test performed on June 23, 2008. Plaintiff argues the ALJ did not discuss how she weighs or evaluates the pulmonary testing evidence.

Plaintiff did not raise any other specific challenges to the ALJ's decision.

### A.    SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT PLAINTIFF DID NOT MEET OR EQUAL A LISTED IMPAIRMENT, i.e. Listing 3.02B - Chronic Pulmonary Insufficency.

Substantial evidence supports the ALJ's finding that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment,

specifically,  Listing 3.02B (Tr. 16-17). Plaintiff failed to meet her burden of establishing

that she was disabled under Listing 3.02B, which states in relevant part:  Chronic restrictive

ventilatory disease, due to any cause, with the FVC equal to or less than the values specified in

Table II corresponding to the person's height without shoes.

**Table II**

| Height without Shoes (centimeters) | Height without Shoes inches | FVC Equal to or less Than (L,BTPS) |
|---|---|---|
| 154 or less | 60 or less | 1.25 |
| 155-160 | 61-63 | 1.35 |
| 161-165 | 64-65 | 1.45 |
| 166-170 | 66-67 | 1.55 |
| 171-175 | 68-69 | 1.65 |
| 176-180 | 70-71 | 1.75 |
| 181 or more | 72 or more | 1.85 |

20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02B.

As discussed by the ALJ, in June 2008 Plaintiff was examined by Martha Pollack,

M.D., a consultative examiner, at the request of the agency (Tr. 15, 18-19, 345-53). Plaintiff

complained of various physical complaints, including pain in her back, knees, shoulders, and

hands (Tr. 345). Plaintiff also complained of occasional chest pain and shortness of breath,

which was not associated with exertion (Tr. 345). However, Plaintiff could not articulate how

she was limited by such pain (Tr. 345). Dr. Pollack noted that Plaintiff was 65 inches tall

without shoes and 280 pounds (Tr. 346). Despite her alleged respiratory issues, Plaintiff

reported smoking a half pack of cigarettes for 15 years (Tr. 345). In addition, as noted by the

ALJ, Dr. Pollack examined Plaintiff's chest and found the A-P diameter grossly normal and

-14-

her breath sounds were of a normal intensity and clear (Tr. 18, 346). The ALJ also noted that Dr. Pollack found Plaintiff's lung exam essentially unremarkable (Tr. 19, 348). As noted by the ALJ, Dr. Pollack also performed a pulmonary function study (Tr. 15, 350-51). Dr. Pollack performed the test pre-bronchodilatation, and postbronchodilatation, after administering albuterol (Tr. 351). Before the medication, the test was administered three times and Plaintiff's FVC levels were 1.4, 1.2, and 1.2, and after the medication Plaintiff's FVC levels were 1.4, 1.6, and 1.4 (Tr. 351). As discussed by the ALJ, Dr. Pollack noted that Plaintiff was cooperative, and expended maximal effort during the test, but she still felt that Plaintiff had difficulty performing the study because of a lack of ability to understand the directions of the test (Tr. 15, 348, 351).

Section E of Listing 3.00 describes how pulmonary function testing should be documented for the purpose of determining whether a claimant meets Listing 3.02B.  Listing 3.00E explains that "the reported one-second. . . forced vital capacity (FVC) should represent the largest of at least three satisfactory forced expiratory maneuvers."   In addition, Listing 3.00E states that "[p]ulmonary function studies performed to assess airflow obstruction without testing after bronchodilators cannot be used to assess levels of impairment in the the range that prevents any gainful work activity."  20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00E.

After Plaintiff was given Albuteral, Plaintiff's largest FVC was 1.6 (Tr. 351), which does not meet Listing 3.02B. Also, the pulmonary function test administered to Plaintiff depended highly on her effort, cooperation, and ability to understand directions. 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00E. (requiring a statement be made in the pulmonary function test

report of the claimant's ability to understand directions as well as her effort and cooperation in performing the pulmonary function tests).

As discussed by the ALJ, Dr. Pollack noted that Plaintiff had difficulty understanding the directions of the test (Tr. 15, 348, 351), possibly compromising the results of the test. Thus, even if Plaintiff's FVC levels were of the level to meet Listing 3.02B, Plaintiff's lack of ability to understand the directions of the test supports the ALJ's finding that she did not meet the Listing. Moreover, there is little medical evidence of record supporting any limitations from respiratory problems. The little medical evidence there is discussing Plaintiff's respiratory system does not support a finding that Plaintiff was disabled due to a respiratory impairment.

Plaintiff failed to meet her burden of providing sufficient evidence to support her allegations of disabling respiratory limitations. *Moore*, 405 F.3d at 1211. For example, in November 2007, Plaintiff presented to the emergency room for left knee pain and had no shortness of breath or chest pain (Tr. 307). In March 2008, Plaintiff presented to the emergency room for left flank pain and her chest was clear bilaterally to auscultation and percussion, and there was no evidence of any rales, wheezes, or rhonchi (Tr. 319). Further, treatment notes from the Florida Department of Health in May 2008 show Plaintiff came in two months prior for shortness of breath, but had no other chest discomfort (Tr. 333).

The opinion of the state agency medical consultant also undermines Plaintiff's allegation of disabling respiratory limitations. State agency consultants are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if their opinions are supported by the evidence in the record.

-16-

In December 2008, Edward Holifield, M.D., a state agency physician reviewed the evidence, including Dr. Pollack's report, and opined Plaintiff could perform medium work and noted Plaintiff was not limited by shortness of breath or chest pain (Tr. 384-85). As discussed by the ALJ, although Dr. Holifield's opinion that Plaintiff could perform medium work was reasonable, additional evidence supported an RFC finding of light work (Tr. 20).

Plaintiff also testified that she smoked one pack of cigarettes every two to three days and reported to Dr. Pollack that she had been smoking at this level for 15 years (Tr. 43, 345). Plaintiff's smoking habit undermines her claim of disabling limitations due to her alleged respiratory condition. *Holley v. Chater*, 931 F. Supp. 840, 847-48 (S.D. Fla. 1996) ("the continued use of cigarettes by plaintiff suggests that his pulmonary condition is not as severe as he alleges and further supports the ALJ's decision to accord [plaintiff's] subjective complaints diminished weight."). Thus, substantial evidence supports the ALJ's finding that Plaintiff did not meet a Listing, including Listing 3.02B.

Plaintiff's contention that the ALJ's discussion of Plaintiff's alleged respiratory limitations was insufficient is also without merit. The Eleventh Circuit has held that even a cursory discussion of whether a claimant's impairments meet or equal a listed impairment is sufficient when the record shows that the claimant's impairments did not meet or equal a listed impairment. *Barron v. Sullivan*, 924 F. 2d 227, 230 n.3 (11th Cir. 1991); *Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).

Plaintiff at all times had the burden of proving that she was disabled. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The Social Security Act clearly states that a physical or mental impairment must be an impairment "that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Commissioner is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). Even if this Court disagrees with the ALJ's resolution of the factual issues and would resolve those disputed factual issues differently, her decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. *Martin*, 894 F.2d at 1529.

In this case, substantial evidence does support the ALJ's decision that Plaintiff was not disabled.

## IV.    Conclusion and Recommendation

In the instant case, the ALJ properly considered the relevant evidence and properly performed her duty as the trier of fact of weighing and resolving any conflicts in the evidence. Substantial evidence supports the ALJ's findings and her conclusion that Plaintiff was not disabled under sections 216(I) and 223(d) of the Social Security Act and not disabled under section 1614(a)(3)(A) of the Social Security Act.

Therefore, it is respectfully recommended that the decision of the Commissioner be *AFFIRMED*.

In Chambers at Fort Myers, Florida this 21st day of August, 2012.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies to all parties:

Jonas H. Kushner, Esquire
John F. Rudy, III

### Notice to Parties

 Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within fourteen (14) days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.